UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL J. SMOLEN,

                          Plaintiff,

                v.

C.O. LAWTON P. BROWN, *et al.*,

                          Defendants.

No. 18-CV-7621 (KMK)

OPINION & ORDER

Appearances:

Samuel J. Smolen
Fallsburg, NY
*Pro se Plaintiff*

Jennifer R. Gashi, Esq.
State of New York Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Pro se Plaintiff Samuel J. Smolen, Jr. ("Plaintiff"), an inmate in Sullivan Correctional Facility, brings this Action against Corrections Officer ("C.O.") Lawton P. Brown ("Brown"), C.O. Elvin D. De La Rosa ("De La Rosa"), C.O. Tyrone D. Darden ("Darden"), Sergeant Andrew Nevins ("Nevins"), C.O. Lyle L. Carrington ("Carrington"), Lieutenant Brian J. Bodge ("Bodge"), an unknown nurse ("Nurse Doe"), an unknown inmate ("Inmate Doe"), and I.G.R.C. Supervisor Q. Quick ("Quick") (collectively, "Defendants). Plaintiff brings this Action pursuant to 42 U.S.C. § 1983, asserting violations of the First, Eighth, and Fourteenth Amendments. Before the Court is a partial Motion To Dismiss (the "Motion") filed by Defendants De La Rosa,

Darden, Nevins, Bodge, and Quick ("Moving Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained herein, Moving Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts, drawn from Plaintiff's Complaint, (Compl. (Dkt. No. 2)), are assumed to be true for the purposes of this Motion. The Court recounts only the facts that are necessary in deciding the instant Motion.

At the time of the relevant events, Plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing"). (Compl. 3).[1] On or about August 15, 2015, Plaintiff filed a written grievance about inmates that he believed were "monopolizing" use of the telephones and the televisions. (*Id.* at 3–4). Brown informed one of those inmates, Inmate Doe, that Plaintiff filed a grievance against him. (*Id.* at 4.) Inmate Doe then assaulted Plaintiff with a "sucker punch[]" to the left side of his head. (*Id.*) The blow knocked Plaintiff to the floor and resulted in a "broken left ear drum." (*Id.*) Plaintiff alleges that Brown, De La Rosa, and Darden "stood by and watched the tension escalate and did nothing to stop it." (*Id.*)

After this assault, Plaintiff was taken to the Sing Sing emergency room. (*Id.*) While Plaintiff was there, Nevins came to the emergency room to investigate the incident and photograph Plaintiff's injuries. (*Id.*) Eventually, Nevins explained that there was something wrong with the camera and he left to obtain a replacement. (*Id.*) Plaintiff requested to use the bathroom. (*Id.* at 5.) Darden, who had been assigned to escort and protect Plaintiff, then exited the emergency room, leaving Plaintiff alone with Carrington. (*Id.* at 4–5.) Darden "called out" to Plaintiff from the hallway telling him to "come out and use the bathroom." (*Id.* at 5.)

---

[1] Citations to the Complaint reflect the page number appearing on the ECF stamp.

However, when Plaintiff attempted to climb from the gurney, Carrington punched the left side of Plaintiff's head, knocking him to the ground. (*Id.*) Carrington then left the clinic immediately. (*Id.*)

Nurse Doe entered the emergency room and saw Plaintiff on the floor, and asked Plaintiff what had happened to him. (*Id.*) Plaintiff informed her that "Carrington had assaulted [him] and requested that she examine [him] again." (*Id.*) Nurse Doe declined to do so, and subsequently failed to report the assault. (*Id.*) Bodge then arrived, and although he "was told what had happened to [Plaintiff]," he "did nothing about having [Plaintiff's] injuries treated and photographed." (*Id.* at 5.)

Plaintiff alleges that, as a result of these incidents, he suffers from "a broken ear drum," "reduced hearing" in his left ear, and "mental and emotional trauma," and he relives the assaults as nightmares. (*Id.* at 4.) Plaintiff seeks an order requiring that New York State install "updated color video cameras that record video and audio in the Housing Block C Housing Unit, in all areas in the clinic and infirmary," and in all indoor and outdoor places "within the entire prison compound." (*Id.* at 7.) Plaintiff requests, however, that inmates be permitted to choose not to be recorded within the clinic and infirmary. (*Id.*) Plaintiff also seeks an order requiring that all corrections officers of all ranks wear body cameras "at all times." (*Id.*) Plaintiff "seek[s] $250,000 in compensatory damages and $500,000 in punitive damages." (*Id.*) Finally, Plaintiff requests that the Court find the "P.L.R.A. is unconstitutional because it applies only to prisoners" and because "state employees obstruct . . . inmate[s] from complying with that Act." (*Id.*)

Plaintiff alleges that he tried to file grievances with Quick and other C.O.s in connection with the above assaults, but they "refused to file [his] grievance" and "denied [Plaintiff's] appeal to do so." (*Id.* at 5.) Plaintiff subsequently wrote to Michelle Bellamy, the "Central Office

Review Committed Statewide I.G.R.C. Coordinator," to complain about Quick's refusal to file his grievances and her denial of his appeal. (*Id.* at 7.) Plaintiff also "filed written complaints about both assaults with the sup[erintendent] of Sing Sing" and with Stephen Maher, the "Chief of the Office of Special Investigations." (*Id.*) A member of Maher's office subsequently interviewed Plaintiff. (*Id.*)

B. Procedural Background

Plaintiff signed his Complaint and Application to proceed in forma pauperis ("IFP") on August 9, 2018. (Dkt. Nos. 1–2.) IFP status was granted on October 11, 2018. (Dkt. No. 4.) On October 22, 2018, the Court issued an Order directing service on the named Defendants, directing New York State Department of Corrections and Community Supervision ("DOCCS") to identify "Nurse Doe," and directing Plaintiff to provide additional information so that DOCCS might identify "Inmate Doe." (Dkt. No. 7.) On December 20, 2018, DOCCS informed Plaintiff and the Court that the person identified by Plaintiff as "Nurse Doe" is likely Alexandra Loaiza. (Dkt. No. 18.) On January 10, 2019, the Court issued an Order directing Plaintiff to file an amended complaint by February 8, 2019 if he wished to proceed against the unnamed Defendants. (Dkt. No. 19.) To date, Plaintiff has not filed an amended complaint.

Pursuant to the motion schedule adopted by the Court on March 19, 2019, (Dkt. No. 27), Moving Defendants filed the Motion, (Dkt. No. 28), and an accompanying Memorandum of Law, (Moving Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 29)), on April 19, 2019.[2] Plaintiff has not filed a response. The Court therefore deems the Motion to be fully submitted.

---

[2] Defendants Brown and Carrington have not joined the instant Motion. Additionally, as Inmate Doe has not been identified, and as Plaintiff has not amended his complaint to include Alexandra Loaiza, neither "Doe" is a party to this Action.

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B. Analysis

Moving Defendants argue that Plaintiff has failed to state an Eighth Amendment claim, that inmates do not have a constitutional right to the grievance process, that Plaintiff has not alleged that Defendants Bodge and Nevins were personally involved in a constitutional violation, and that Moving Defendants are entitled to qualified immunity. (*See generally* Defs.' Mem.). The Court addresses these arguments only to the extent necessary to resolve the instant Motion.

1. Liability in Connection Inmate Doe's Assault

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N. Y. C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citation omitted). However, to state an Eighth Amendment claim under § 1983 for a failure to guarantee an inmate's safety, a plaintiff "must allege actions or omissions sufficient to demonstrate deliberate indifference; *mere negligence* will not suffice." *Id.* (emphasis added). A plaintiff must therefore demonstrate (1) "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2), "that the defendant prison officials possessed sufficient culpable intent." *Id.* (citation omitted).

Of particular relevance here, a "failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents" may amount to an Eighth Amendment violation. *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citation omitted). However, "[a]n isolated omission to act by a state prison guard does not support a claim under [§] 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)) (alteration omitted). In this context, "[d]eliberate indifference exists when an official has knowledge that an inmate

7

faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) (citation and quotation marks omitted). "In general, to satisfy the requirements of an Eighth Amendment failure to protect claim, a plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Id.* (citation and quotation marks omitted); *see also Parris v. N. Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("Courts routinely deny deliberate indifference claims based upon surprise attacks. The plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." (citations and quotation marks omitted)); *Fernandez v. N. Y. C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (dismissing an inmate's failure-to-protect claim because the plaintiff failed to allege that he and his assailant "were involved in a prior altercation, that [his assailant] had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between [the plaintiff] and [his assailant]").

Here, Plaintiff's claim that De La Rosa and Darden "stood by and watched the tension [between Inmate Doe and Plaintiff] escalate and did nothing to stop it" prior to Inmate Doe's assault on Plaintiff, (Compl. 4), is best interpreted as an Eighth Amendment "failure to protect" claim. *See Ayers*, 780 F.2d at 209 (explaining that a "failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents" may amount to an Eighth Amendment violation (citation omitted)). Nevertheless, Plaintiff has alleged insufficient facts to sustain such a claim. In particular, Plaintiff has alleged no facts suggesting prior altercations or threats between Plaintiff and Inmate Doe, much less De La Rosa's or

8

Darden's knowledge of such prior incidents. *See Harrison v. Traylor*, No. 17-CV-6678, 2019 WL 120774, at *6 (S.D.N.Y. Jan. 7, 2019) (noting that "courts in the Southern District of New York tend to require that prison officials had tangible notice—that is, actual knowledge about a prior altercation between the plaintiff and his attacker or about threats that had been made against the plaintiff, before they can be deemed deliberately indifferent and to subsequent inmate-on-inmate violence" (collecting cases)); *see also Thomas*, 2017 WL 3726759, at *8 (requiring that a plaintiff allege that defendant officers "knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff" (citation omitted)); *see also Parris*, 947 F. Supp. 2d at 363 (same). Here, Plaintiff does not even allege that De La Rosa or Darden had knowledge of the grievance that was the source of tension between Plaintiff and Inmate Doe. (*See* Compl. 4.) "Moreover, the fact that [P]laintiff claims he is unaware of the identity of his attacker [identified only as "John Doe"] makes it implausible to infer that [] [D]efendants had any particular knowledge of the risk [] [P]laintiff faced." *Id.* Nor can Plaintiff rely on the bare allegation that his attacker was "a known violent gang member." (Compl. 4.) Precedent makes clear that such an allegation is insufficient to establish the requisite "deliberate indifference" necessary to sustain a "failure to protect" claim. *See Thomas*, 2017 WL 3726759, at *8 (rejecting a "failure to protect" claim where the plaintiff "merely alleged that he was celled with an inmate who was known to be violent" (record citation omitted)); *see also Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *10 (S.D.N.Y. Mar. 31, 2016) (explaining that a failure to protect claim "requires more than a showing that the correctional facility contains dangerous conditions").

Plaintiff's allegation that De La Rosa and Darden were present as Inmate Doe was "sucker punched" is similarly insufficient. (Compl. 4.) This is so because the Complaint is

9

devoid of any allegation suggesting the prior argument was visibly likely to escalate into a violent confrontation, or that De La Rosa and Darden had adequate time and opportunity to react and intervene. *See France v. Cty. of Westchester*, No. 12-CV-5576, 2016 WL 1270259, at *7 n.10 (S.D.N.Y. Mar. 30, 2016) (explaining that a plaintiff pursuing a claim against an officer for a failure to protect him from another inmate must allege that the officer had "a realistic opportunity to intervene" (emphasis omitted)); *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015) (finding that, for a failure to protect claim to survive a motion for summary judgment, there must be a showing that "the officer had a realistic opportunity to intervene and prevent the harm . . . ."). On the contrary, Plaintiff alleges only a brief altercation between Plaintiff and Inmate Doe (consisting of a single blow), and expressly describes the assault as a surprise ("sucker punch[]"). (Compl. 4.) Given the brevity and nature of the alleged assault, there can be no reasonable inference that De La Rosa or Darden had the opportunity to intervene. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (explaining that "failure to intervene" claims require a defendant to have "a realistic opportunity to intervene").

In the absence of any suggestion De La Rosa or Darden were "deliberately indifferent in failing to protect him from the surprise attack . . . [Plaintiff] has failed to state a claim for violation of the Eighth Amendment." *Parris*, 947 F. Supp. 2d at 363–64.

### 2. Liability in Connection with Carrington's Alleged Assault

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations and italics omitted). To establish such personal involvement, a plaintiff must show:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

> failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation and italics omitted). Thus, a § 1983 claim "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply." *Ayers*, 780 F.2d at 210 (citation omitted); *see also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) ("An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority, but can be held liable if he was personally involved in the alleged deprivation." (citation and quotation marks omitted)). However, "a supervisor may be held liable if he or she was personally a direct participant in the constitutional violation." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) (citation and quotation marks omitted). Direct participants include a person "who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Id.* (citation omitted).

Here, Plaintiff alleges only that Carrington assaulted him, and that other officers had left the room or not yet arrived. (*See* Comp. 4-5.) The Complaint is therefore devoid of allegations suggesting that Moving Defendants were in any way involved in the alleged incident.[3] By Plaintiff's own account, no Moving Defendant was even present during the alleged assault. Nevins, who came to the emergency room to investigate and photograph Plaintiff's injuries had left to obtain a replacement camera. (*Id*. at 4.) Darden had also recently exited the room. (*Id.*) Bodge did not arrive on the scene until well after the incident. (*Id.* at 5.) Nor is there anything

---

[3] Although Moving Defendants' Motion discusses only Nevins's and Bodge's potential liability stemming from this assault, the Court also considers Darden's potential liability.

suspicious about the fact that Darden told Plaintiff that he could "come out and use the bathroom" immediately prior to Carrington's punching Plaintiff. (*Id.*) After all, Plaintiff acknowledges that he had just "requested to use the bathroom." (*Id.*) Accordingly, no reasonable inference can be drawn suggesting Darden's involvement in the alleged assault.

Because no alleged facts suggest that Moving Defendants were present, let alone personally involved in, Carrington's alleged assault on Plaintiff, all § 1983 claims against Moving Defendants based on that assault are dismissed. *See Torreso*, 764 F.3d at 234 (explaining "personal involvement" requirement for § 1983 excessive force claims).

### 3. Grievance Process Claims

Plaintiff's only allegation regarding Defendant Quick is that she "refused to file [his] grievance" and "denied [his] appeal to do so." (Compl. 4.) Such an allegation in insufficient to state a constitutional claim.

The First Amendment protects a right to access the courts and to petition the government for the redress of grievances. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) (noting that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"). However, "[t]o state a claim for denial of access to the courts, 'a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.'" *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). Accordingly, courts have generally held that where prison officials "ignore a grievance that raises constitutional claims, the proper avenue to seek relief is . . . directly petitioning the government for redress of his claims." *Id.* (quoting *Harris v. Westchester Cty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3,

2008)). Here, Plaintiff has filed the instant Action. Accordingly, "any claim that [P]laintiff was deprived of his right to petition the government for redress is belied by the fact of his bringing this lawsuit." *Crispin*, 2019 WL 2419661, at *4 (citation omitted); *see also Harris*, 2008 WL 953616, at *5 ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff here: directly petitioning the government for redress of his claims." (collecting cases)).

To the extent that Plaintiff seeks to advance claims under the Fourteenth Amendment, such claims fail as well. Courts have consistently held that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citations omitted); *see also Ford v. Aramark*, No. 18-CV-2696, 2020 WL 377882, at *11 (S.D.N.Y. Jan. 23, 2020) (same) (collecting cases); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[T]he refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." (citation omitted)). Accordingly, Plaintiff's bare allegation that Quick refused his grievances and denied appeals does not state a claim under the Fourteenth Amendment.

### III. Conclusion

For the reasons stated above, Moving Defendants' Motion To Dismiss is granted. All claims against Defendants De La Rosa, Darden, Nevins, Bodge and Quick are therefore dismissed.[4] Because this is the first adjudication of Plaintiff's claims, dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, he must do so within 30 days of the

---

[4] Defendants Brown and Carrington did not move for dismissal of claims brought against them. Accordingly, these claims remain.

date of this Opinion. Plaintiff should include within that amended complaint changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, prior pleadings. The amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. Failure to file an amended complaint may result in dismissal with prejudice of those claims that have been dismissed without prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 28), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: March 13, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE