UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL J. SMOLEN,

                                    Plaintiff,

        v.

LAWTON P. BROWN, *et al*.,

                                    Defendants.

No. 18-CV-7621 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Samuel J. Smolen
Ossining, NY
*Pro se Plaintiff*

Jennifer Rose Gashi, Esq.
Kathryn E Martin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M.  KARAS, United States District Judge:

        Samuel J. Smolen ("Plaintiff") brings this Action against Correction Officers Lawton P.

Brown ("Brown") and Lyle L. Carrington ("Carrington," together, "Defendants"), pursuant to 42

U.S.C. § 1983, alleging that Brown failed to protect him from another incarcerated individual

who assaulted him and that Carrington assaulted him.  (*See generally* Compl. (Dkt. No. 2).)

Before the Court is Defendants' Motion for Summary Judgment (the "Motion") against Plaintiff

on the issue of exhaustion of administrative remedies and Plaintiff's failure to protect claim.

(Not. of Mot. (Dkt. No. 93).)

        For the reasons stated herein, Defendants' Motion is denied.

I.  Background

A.  Factual Background

The following facts are taken from Defendants' statements pursuant to Local Civil Rule 56.1.  (Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 99).)  Additionally, where appropriate, the Court cites directly to the admissible evidence submitted by the Parties.  The facts as described below are in dispute to the extent indicated.[1]

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13–CV–2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

Here, Defendants filed and served their statement pursuant to Rule 56.1, (*see* Defs.' 56.1), and sent the required Local Rule 56.2 Notice to Plaintiff (*see* Dkt. No. 95).  However, Plaintiff failed to submit a response to Defendants' 56.1 Statement of Facts.  (*See generally* Dkt.) Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11–CV–9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  *See also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund–Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11–CV–1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11–CV–3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013)

Plaintiff is an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Defs.' 56.1 ¶ 1.) Plaintiff's claims arose while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing"). (*Id.* ¶ 2.) At the time of the allegations, Brown and Carrington were Correction Officers employed by DOCCS at Sing Sing. (*Id.* ¶ 3.)

Plaintiff testified that Brown would always open one inmate's cell first and that inmate would then monopolize the phone. (Martin Decl. Ex. 1, at 14:17–25 (Dkt. No. 96).) Plaintiff filed a grievance about the phone monopolization and inmates changing the TV channel when they had no authorization to do so. (*Id.*) Plaintiff testified that he filed this grievance around August 2015 through the mail. (*Id.* at 15:8–14.) Plaintiff does not recall what happened to that grievance. (*Id.* at 17:9–10.)

On August 25, 2015, during recreation on the 4 Gallery in Housing Block C, an incarcerated individual struck Plaintiff on the left side of his head. (Defs.' 56.1 ¶ 4.) Plaintiff described the assault as a "sucker punch." (*Id.* ¶ 5.) Before Plaintiff was punched, "Brown was telling the inmates more or less that [Plaintiff] had written a complaint that the TV and the telephone was [sic] being monopolized," and told everyone out on the company that "from now on, the TV will not be changed." (Martin Decl. Ex. 1, at 18:23–19:25.) Brown yelled at an inmate who wanted to change the channel "that he couldn't change the channel" and "ordered the inmate to lock in." (*Id.* at 17:13–24.) Plaintiff had no prior friction with the incarcerated

---

(italics omitted) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (quotation marks omitted)).

individual who punched him and "associated well" with him.  (Defs.' 56.1 ¶¶ 6–7.)  The assault was a "complete shock" to Plaintiff.  (*Id.* ¶ 8.)

Plaintiff testified that "Brown instigated the assault" by saying "that [Plaintiff] had filed a complaint that the phone and the TV were being monopolized."  (Martin Decl. Ex. 1, at 20:7–13.)  In telling the inmate who was going to change the channel to lock in, Brown was "attempting to create friction between [Plaintiff] and the other inmates in that company."  (*Id.* at 20:25–21:4.)  Plaintiff testified that "Correction Officers often use inmates as their soldiers," "if they don't like a particular inmate because he's filing grievances and complaints, they will encourage another inmate to assault another inmate," and that Brown "didn't like [him] and he didn't like the complaints and grievances that [Plaintiff] was filing."  (*Id.* at 21:25–22:12.)  Plaintiff additionally testified that three officers were standing at the entrance to the company and that when he was punched, "three officers were standing on the gate as if they were waiting for it to happen" and that "[i]t was a set up.  They wanted to see me get hurt and they succeeded."  (*Id.* at 17:23–24; 20:15–20.)

Following the assault, Plaintiff was brought to the Sing Sing Medical Clinic to be examined and was diagnosed with a ruptured left eardrum.  (Defs.' 56.1 ¶¶ 9–10.)  Plaintiff claims that while he was alone in an examination room, Carrington entered the room and, without saying a word, punched him in the side of the head, and then left.  (Martin Decl. Ex. 1, at 26:11–13, 28:4–7, 29:16–17.)  Plaintiff had never seen Carrington before that incident.  (*Id.* at 27:10–13.)  Carrington denies punching Plaintiff.  (*See* Answer ¶ 1 (Dkt. No. 34).)

In his Complaint, Plaintiff alleged that he tried to file grievances with I.G.R.C. Supervisor Quick and other Correction Officers in connection with the above assaults, but they

"refused to file [his] grievance" and "denied [Plaintiff's] appeal to do so." (Compl. at 3A.)[2]  In

Quick's declaration, Quick affirmed "I do not recall refusing to process any grievance submitted

by Plaintiff" and that the only reason she would have not filed his grievance is if it was untimely.

(Quick Decl. ¶ 12 (Dkt. No. 98).)  According to the Complaint, Plaintiff subsequently wrote to

Michelle Bellamy, the "Central Office Review Committee Statewide I.G.R.C. Coordinator," to

complain about "Quick's refusal to file [his] grievances and denial of [his] appeal about her

refusal."  (Compl. at 5.)  Plaintiff also "filed written complaints about both assaults with the

sup[erintendent] of Sing Sing" and with Stephen Maher, the "Chief of the Office of Special

Investigations."  (*Id.*)  A member of Stephen Maher's office subsequently interviewed Plaintiff.

(*Id.*)

Plaintiff testified at his deposition that he "probably" filed a grievance about Brown and

that he remembered "filing the grievance regarding the suit."  (Martin Decl. Ex. 1, at 13:17–21.)

Plaintiff testified that he submitted the grievance by mail and received a response but did not

recall what the response was.  (*Id.* at 37:12–19.)  At his deposition, Plaintiff did not recall what

happened to his grievance.  (Defs.' 56.1 ¶ 17.)  Plaintiff did not recall if he appealed the

grievance decision to the Superintendent or the Central Office Review Committee ("CORC").

(*Id.* ¶ 18.)  When asked, "Do you recall writing to the Central Office Review Committee

statewide [Incarcerated Grievance Resolution Committee ("IGRC")] coordinator Bellamy

regarding Ms. Quick's refusal to file your grievance?" Plaintiff responded, "I don't recall.  I may

have."  (*Id.* ¶ 19.)  There is no record in the Sing Sing computer database of Plaintiff filing a

---

[2] Plaintiff's Complaint was filed under penalty of perjury, therefore the Court considers it as affirmative evidence.  *See Thomas v. Jacobs*, No. 19-CV-6554, 2022 WL 504787, at *1 n.1 (S.D.N.Y. Feb. 17, 2022) (noting that the court would consider allegation in plaintiff's original complaint as affirmative evidence as it was sworn under penalty of perjury as required under 28 U.S.C. § 1746).

grievance regarding the allegations in the Complaint.  (*Id*. ¶ 13.)  There is no record of CORC having received an appeal of any grievance regarding the allegations in the Complaint, nor of having received any correspondence from Plaintiff.  (*Id*. ¶ 15.)  Plaintiff appealed 315 grievances to CORC prior to August 2015.  (*Id*. ¶ 16.)  Plaintiff files "a lot of grievances" and is "quite familiar with the grievance procedure."  (*Id*. ¶ 11.)  Between 2014 and 2016, Plaintiff filed 12 grievances, 10 of which he appealed to the CORC.  (*Id*. ¶ 12.)

### B.  Procedural History

Plaintiff filed his Complaint on August 20, 2018.  (Dkt. No. 2.)  On March 13, 2020, this Court dismissed claims against five defendants who moved to dismiss Plaintiff's claims against them.  (Dkt. No. 30.)  On December 21, 2022, Defendants filed the instant Motion.  (*See* Defs.' Mem. of Law in Supp. of Mot. for Summary Judgment ("Defs.' Mem.") (Dkt. No. 94).)  Plaintiff did not oppose the instant Motion.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

Thus, a court's goal should be "to isolate and dispose of factually unsupported claims."  *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . .");  *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge");  *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does

not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[ ]made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . .  are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

## B.  Exhaustion Under the PLRA

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly* . . . .  Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules."  *Williams v.*

*Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted) (emphasis in original).

To satisfy the exhaustion requirements, a prisoner "must exhaust all levels" of DOCCS's "Inmate Grievance Program" ("IGP"). *Little v. Mun. Corp., City of N.Y.*, No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017). The IGP provides for a three-step grievance process. *See* 7 N.Y.C.R.R. § 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. *See* 7 N.Y.C.R.R. § 701.5(a)(1). Once filed, the representatives of the IGRC have up to 16 calendar days to resolve the grievance informally. *Id.* § 701.5(b)(1). If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii). The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the DOCCS Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance. *Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit. *See id.* Given the aforementioned requirement to exhaust all levels of administrative remedies, *see Little*, 2017 WL 1184326, at

10

*11, "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted," *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642.  As the Supreme Court has explained "the exhaustion requirement hinges on the "'availab[ility]' of administrative remedies . . . .  [A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id.* at 643–44.  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  The Second Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be exhaustive," but has declined to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2. Nonetheless, these three circumstances "guide the Court's inquiry." *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

There is no dispute that a grievance procedure exists at DOCCS, indeed Plaintiff himself has used it many times before the alleged incident—fully exhausting 315 grievance complaints prior to August 2015, including nine which were initially filed at Sing Sing.  (Seguin Decl. ¶¶ 3–7, 12 (Dkt. No. 97).)  However, there is no record in the Sing Sing computer database of Plaintiff filing a grievance regarding the allegations in the Complaint.  (Defs.' 56.1 ¶ 13.)  There is also no record of CORC having received an appeal of any grievance regarding the allegations in the Complaint, nor of having received any correspondence from Plaintiff regarding his grievance not being accepted for filing.  (*Id*. ¶ 15.)  Accordingly, the record clearly demonstrates that Plaintiff did not exhaust all steps of the grievance process.

"Once [a] defendant[] ha[s] met [the] initial burden of demonstrating that a grievance process exists . . . a plaintiff bears the burden of demonstrat[ing] that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *White v. Velie*, No. 16-CV-1183, 2017 WL 4082706, at *2 (2d Cir. 2017) (quotation marks and citation omitted).  The Court takes Plaintiff's assertions that officers refused to file his grievance as an argument that the grievance process was unavailable to him, either because the process "operates as a simple dead end," was "practically speaking, incapable of use," or because "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S.  643–44.

Defendants argue that "Plaintiff's self-serving and unsupported assertion that the IGP Supervisor refused to accept his grievance is insufficient to establish a genuine issue of material fact as to the availability of the inmate grievance process to Plaintiff."  (Defs.' Mem. 7.)  It is true that a "[p]laintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact." *Engles v. Jones*, No.

13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment

to defendants for failure to exhaust where defendants demonstrated through admissible evidence

that there was no record of the plaintiff filing his grievance and where the plaintiff merely

alleged without any documentary support that his grievance was lost or destroyed); *see also Scott*

*v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held

. . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the

exhaustion requirement.") (citation omitted); *Mims v. Yehl*, No. 13-CV-6405, 2014 WL 4715883,

at *4 (W.D.N.Y. Sept. 22, 2014) (holding that inmate's "unsupported statement" that he has

submitted a grievance is "insufficient at the summary judgment stage").

However, "courts in the Second Circuit have excused failure to exhaust where a plaintiff

identified an officer or officers who took some specified action to prevent the plaintiff from

filing a grievance." *Davis v. Grant,* No. 15-CV-5359, 2019 WL 498277, at *9 (S.D.N.Y. Feb. 8,

2019) (collecting cases); *cf. Heyliger v. Gebler*, No. 06-CV-6220, 2014 WL 4923140, at *3

(W.D.N.Y. Sept. 30, 2014) (granting summary judgment, notwithstanding plaintiff's testimony

that his "original grievance was discarded by prison officials," where plaintiff "never described

or named the individual who allegedly took this action"), *aff'd*, 624 Fed.Appx. 780 (2d Cir.

2015). Before the Court at this juncture is "a clash of sworn statements" where "Plaintiff attested

that he gave his grievance to a correction officer, and [Defendant] submitted sworn statements

from inmate grievance program supervisors indicating that a review of their records revealed that

no grievance was filed," and that Quick does not recall refusing to process any of Plaintiff's

grievances. *Hudson v. Kirkey*, No. 20-CV-581, 2021 WL 1966721, at *3 (N.D.N.Y. May 17,

2021). "To the extent that these statements are in contradiction, the Court cannot resolve this

contradiction at the summary judgment stage, because the Court is prohibited from making

credibility determinations."  *Id.*; *see also McLean v. LaClair*, No. 19-CV-1227, 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021) ("Here, there is again a clash of sworn statements: Plaintiff attests that he attempted to submit the appeals, and Defendants attest that they were never filed. . . . [T]he Court cannot credit Defendants' sworn statements over Plaintiff's.").

Moreover, at summary judgment, the Court "must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354.  Given this ambit, it is not clear to this Court that these two statements are in fact contradictory.  Indeed, "the Court must infer that [Plaintiff's] grievance was never filed because prison authorities did not *file it*, not because Plaintiff *did not submit it*."  *Hudson*, 2021 WL 1966721, at *4 (emphasis added); *see also McLean*, 2021 WL 671650, at *8 ("[T]here is no necessary inconsistency between [the] [p]laintiff's claim that he mailed the appeals and [the] [d]efendants' claim that they were never filed; and the Court must grant [the] [p]laintiff the favorable inference that his grievance was sent and received, but not filed, for reasons out of his control."); *Zulu v. Barnhart*, No. 16-CV-1408, 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that . . . the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed.  The absence of any official records of plaintiff's initial attempts to give the incident comports with [the] plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed."), *report and recommendation adopted*, 2019 WL 2150628 (N.D.N.Y. May 17, 2019).[3]

---

[3] Plaintiff additionally testified that "Brown instigated the assault" by saying "that [Plaintiff] had filed a complaint that the phone and the TV were being monopolized."  (Martin Decl. Ex. 1, at 20:7–13.)  Plaintiff testified that Brown, in telling an inmate who was going to change the channel to lock in, was "attempting to create friction between me and the other inmates in that company."  (*Id.* at 20:25–21:4.)  Plaintiff testified that "Correction Officers often

Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented." *Hudson*, 2021 WL 1966721, at \*4; *see also Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (stating that "the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA."); *McLean*, 2021 WL 671650, at \*9 (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence).

C.  Failure to Protect

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (same).  Specifically, "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Lee v. Artuz*, No.

_____

use inmates as their soldiers," "if they don't like a particular inmate because he's filing grievances and complaints, they will encourage another inmate to assault another inmate" and that Brown "didn't like [him] and he didn't like the complaints and grievances that [he] was filing."  (*Id*. at 21:25–22:12.)  Plaintiff additionally testified that three officers were standing at the entrance to the company and that "[i]t was a set up.  They wanted to see me get hurt and they succeeded."  (*Id*. at 20:15–20.)  Insofar as this testimony can be interpreted as a claim that Brown intimidated Plaintiff, such a claim cannot stand, as Plaintiff claims that he did in fact attempt to file a grievance—accordingly, it was not intimidation from Brown that possibly prevented Plaintiff from filing a grievance.  *See Cicio v. Alvarez*, No. 19-CV-9883, 2022 WL 1003796, at \*5 (S.D.N.Y. Apr. 4, 2022) ("[W]hen an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground.") (quotation marks and citation omitted); *Whittington v. Ponte*, No. 16-CV-1152, 2020 WL 2750372, at \*9 (S.D.N.Y. May 27, 2020) (holding that the fact that plaintiff filed grievances contemporaneously with the challenged incidents "cuts strongly against any theory of unavailability.").

96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quotation marks and citation

omitted).  However, "not . . . every injury suffered by one prisoner at the hands of another . . .

translates into constitutional liability for prison officials responsible for the victim's safety."

*Farmer*, 511 U.S. at 834.  Instead, "the prisoner must allege actions or omissions sufficient to

demonstrate deliberate indifference; mere negligence will not suffice."  *Hayes*, 84 F.3d at 620;

*see also Price v. Oropallo,* No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014)

("Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they

act with deliberate indifference to the inmate's safety.").

To satisfy the deliberate indifference standard, a plaintiff must allege that (1) "he is

incarcerated under conditions posing a substantial risk of serious harm" and (2) "the defendant

prison officials possessed sufficient culpable intent."  *Hayes*, 84 F.3d at 620.  The first prong is

objective and requires that prison officials provide inmates with "basic human needs, one of

which is reasonable safety."  *Helling v. McKinney,* 509 U.S. 25, 33 (1993) (quotation marks and

citation omitted). "The second prong of the deliberate indifference test, culpable intent, in turn,

involves a two-tier inquiry."  *Hayes*, 84 F.3d at 620.  "Specifically, a prison official has sufficient

culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he

disregards that risk by failing to take reasonable measures to abate the harm."  *Id*.  As the

Supreme Court has made clear, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837; *see also Price*, 2014 WL 4146276, at *8 (explaining that to

establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew

of and disregarded an excessive risk of harm to the plaintiff's safety").  A defendant's knowledge

can be established through "inference from circumstantial evidence," including "from the very

fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.") (quotation marks and citation omitted).

Courts have found that the subjective prong was satisfied where "the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *4 (S.D.N.Y. Sept. 1, 2020) (citation and quotation marks omitted) (finding that the plaintiff failed to plausibly allege the second prong when he "provide[d] no specifics that might provide a factual basis" for the risk to his safety, including any prior instances of violence); *see also Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (finding that the plaintiff failed to plausibly allege the second prong when he did not "allege that the defendants knew of any threats made against the plaintiff or that the plaintiff had been involved in any prior altercations"); *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (finding that the plaintiff failed to plausibly allege the second prong, because he did not allege he "and [an] inmate [] were involved in a prior altercation, that [the inmate] had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between [the] [p]laintiff and [the] inmate"). "It is well-established that prison officials cannot be deliberately indifferent to a surprise attack." *Rivera v. Royce,* No. 19-CV-10425, 2021 WL 2413396, at *8 (S.D.N.Y. June 11, 2021). Accordingly, "[a]bsent clear notice of a risk of harm to the prisoner, [c]ourts routinely deny deliberate indifference claims based upon surprise attacks." *Fernandez,* 2010 WL 1222017, at *4.

Defendants posit that the attack on Plaintiff was a surprise as Plaintiff was "completely shocked" by the assault and described it as a "sucker punch." (Defs.' Mem. 10.) Indeed, Plaintiff had no prior friction with the incarcerated individual who punched him and "associated well" with him, (Def.'s 56.1 ¶¶ 6–7), and Plaintiff offers no evidence to suggest otherwise. Accordingly, Defendants argue that "it would not be possible for Defendant Brown to prevent the sucker punch or know beforehand that Plaintiff was at risk of substantial harm." (Defs.' Mem. 10.) The Court agrees that generally, in the absence of any prior altercation or indication that an assault was imminent, a failure to protect claim does not survive. *See Simon v. City of New York Dep't of Corr.*, No. 18-CV-12063, 2022 WL 3636238, at *6 (S.D.N.Y. July 29, 2022), *report and recommendation adopted*, No. 18-CV-12063, 2022 WL 3599130 (S.D.N.Y. Aug. 23, 2022) ("On this record, the October 26 attack is properly considered a surprise attack, and no reasonable jury could find that Defendants were deliberately indifferent to a substantial risk of serious harm."); *Rivera*, 2021 WL 2413396, at *8 ("It is well-established that prison officials cannot be deliberately indifferent to a surprise attack."); *Bowers v. Dep't of Corr. & Cmty. Supervision,* No. 17-CV-0789, 2017 WL 11711834, at *4 (N.D.N.Y. Oct. 4, 2017) ("The fact that plaintiff was injured during what he describes as a surprise attack does not give rise to a cognizable claim that he was incarcerated under conditions posing a 'substantial risk of serious harm,' and that the assigned officers were deliberately indifferent to that risk."); *Zimmerman v. Macomber*, No. 95-CV-882, 2001 WL 946383, at *6 (S.D.N.Y. Aug. 21, 2001) (denying claim where plaintiff did "not suggest that [defendant] knew or should have known" that he would be attacked by inmate, and plaintiff admitted "that he himself was surprised").

However, Plaintiff argues that Brown intentionally encouraged the assault; he testified that "Brown instigated the assault" by saying "that [Plaintiff] had filed a complaint that the

phone and the TV were being monopolized."  (Martin Decl. Ex. 1, at 20:7–13.)  Plaintiff posits

that Brown was "attempting to create friction between [Plaintiff] and the other inmates in that

company" by telling an inmate who was going to change the channel to lock in.  (*Id*. at 20:25–

21:4.)  Plaintiff testified that "Correction Officers often use inmates as their soldiers," "if they

don't like a particular inmate because he's filing grievances and complaints, they will encourage

another inmate to assault another inmate" and that Brown "didn't like [him] and he didn't like

the complaints and grievances that [he] was filing."  (*Id*. at 21:25–22:12.)

"Intentionally exposing an inmate to the risk of harm . . . with no penological purpose is

indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm

the inmate at worst, thus constituting cruel and unusual punishment in violation of the [Eighth]

[A]mendment to the U.S. Constitution."  *Mirabella v. Correction Officer O'Keenan*, No. 15-CV-

142, 2016 WL 4678980, at *4 (W.D.N.Y. Sept. 7, 2016) (citation omitted) (holding allegations

that defendant officer "told inmates in the plaintiff's housing unit that he was a pedophile and

several inmates that the plaintiff was a 'snitch' and that he should be punched in the mouth for

'snitching'" sufficient to demonstrate that defendant "was aware of the source of the harm to

which [plaintiff] had been subjected" and sufficient "to state a claim for failure to protect");

*Young v. Coughlin*, No. 93-CV-0262, 1998 WL 32518, at *7  (S.D.N.Y. Jan. 29, 1998), *aff'd*, 182

F.3d 902 (2d Cir. 1999) (holding correctional officer's comments suggesting that plaintiff was a

homosexual and directing other inmates to sexually harass and "jump" him could support an

Eighth Amendment excessive force claim if they incited other inmates to assault plaintiff,

placing him at grave risk of assault)); *see also Smith v. Miller*, No. 15-CV-9561, 2017 WL

4838322, at *12 (S.D.N.Y. Oct. 23, 2017) ("[T]here is no question that instructing or

encouraging other [prisoners] to attack an inmate poses an objectively serious risk of harm.");

*Bouknight v. Shaw*, No. 08-CV-5187, 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009) ("[A] prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors incited other inmates to assault [the plaintiff] ..., thereby placing him at grave risk of physical harm.") (quotation marks and citation omitted). Accordingly, "[a] supported allegation that a correctional official made statements intending to incite inmates to attack another inmate may state a claim under the Eighth or Fourteenth Amendment." *Mirabella*, 2016 WL 4678980, at *4. at 3–4 (holding that disseminating information about a plaintiff's sex offense charges to inmates and other correctional officers and informing plaintiff that he had a "hit" on him could establish an Eighth Amendment violation).

While Brown was informing the inmates of a policy change, which arguably has a penological purpose, it is unclear that notifying other inmates that Plaintiff was responsible for this disfavored policy change holds any penological value. Additionally, it is clear that disseminating this information exposed Plaintiff to risk, as he was attacked immediately after the information was provided to other inmates without any other provocation or apparent reason. (Defs.' 56.1 ¶¶ 4–5; Martin Decl. Ex. 1, at 18:23–19:25.) Accordingly, it will be for the jury to decide whether Brown "[i]ntentionally expos[ed]" Plaintiff "to the risk of harm . . . with no penological purpose" by identifying him as the source of a undesirable policy change. *Mirabella*, 2016 WL 4678980, at *4; *see also Balentine v. Doe,* No. 21-CV-1383, 2022 WL 17818553, at *6 (N.D.N.Y. Dec. 20, 2022) (holding claims that a guard's "public statement to several inmates that Plaintiff is 'special' at washing dishes shortly after Plaintiff was hospitalized for refusing to wash other inmates' dishes" with corroborating information from other inmates that the guard wanted inmates to "beat [Plaintiff's] ass" survived); *Brown v. Griffin,* No. 19-CV-02296, 2022 WL 767086, at *6 (S.D.N.Y. Mar. 14, 2022) ("[T]elling other inmates that Plaintiff

is a racist would create a substantial risk of harm that he be injured or attacked, which

[Defendant] disregarded, and clearly does not have any kind of penological interest."); *cf.*

*Zielinski v. Annucci*, No. 17-CV-1042, 2019 WL 2870337, at *10 (N.D.N.Y. Mar. 19, 2019),

*report and recommendation adopted*, No. 17-CV-1042, 2019 WL 2869608 (N.D.N.Y. July 3,

2019) (dismissing failure to protect claim when plaintiff alleged that an unnamed inmate

assaulted him and that the attack was "orchestrated" by guards with no factual support).

<u>III.  Conclusion</u>

For the foregoing reasons, Defendants' Motion is denied.  The Court will hold a status

conference on October 12, 2023 at 10 A.M.  The Clerk of the Court is respectfully requested to

terminate the pending motion at Dkt. No. 93.

SO ORDERED.

Dated:    September 22, 2023
          White Plains, New York

_____
       KENNETH M. KARAS
    United States District Judge

21